

**SO ORDERED.**
**SIGNED this 25th day of March, 2015**


**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_Shelley D. Rucker_
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION


In re:

                                      No.  14-10532
                                      Chapter 7

EAST TECH COMPANY,

        Debtor;


RICHARD P. JAHN, JR., Trustee,

        Plaintiff

v

                                        Adversary Proceeding
                                      No.  14-1076

PRYOR BACON, JR. and
PRYORITY PARTNERSHIP


        Defendant.

*Appearances for Richard P. Jahn, Trustee*

> David L. Moss
> Fields & Moss, P.C.
> 1200 Mountain Creek Road
> Suite 260
> Chattanooga, TN 37405

*Appearances for Pryor Bacon, Jr. and*
*Pryority Partnership*

> Elizabeth B. Donnovin
> Johnson & Mulroony PC
> 428 McCallie Avenue
> Chattanooga, TN 37402

## MEMORANDUM

Pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated into adversary

proceedings by Federal Rule of Bankruptcy Procedure 7012(b), defendants Pryor Bacon, Jr.

("Bacon") and Pryority Partnership ("Pryority") (collectively "Defendants") move to dismiss the

complaint ("Complaint") filed by plaintiff trustee Richard P. Jahn ("Plaintiff" or "Trustee") in

this adversary proceeding. [Doc. No. 8].[1] The Trustee opposes the motion. [Doc. No. 10].

The Trustee's Complaint seeks a determination from this court pursuant to 11 U.S.C. §

362 that the Defendants violated the automatic stay. It further seeks a judgment for all actual

damages caused by the alleged violation of the stay, as well as punitive damages. The Trustee

also asks the court to determine the fair market value of the use of the real estate at issue, offset

that amount against any damages award and subordinate the remaining administrative claim of

Pryority pursuant to 11 U.S.C. § 510(c). *See* [Doc. No. 1, Complaint].

---

[1] All docket entry reference numbers refer to docket entries for Adversary Proceeding No. 14-1076, unless otherwise noted.

2

The court has reviewed the briefing of the parties and the relevant caselaw and makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The court will deny the Defendants' motion to dismiss.

## I.      Background

Although the Defendants dispute many of the facts alleged in the Trustee's Complaint in footnotes made in their briefing, the court must view the facts to be as alleged by the Trustee in his Complaint in considering the Defendants' motion to dismiss the Complaint. The court may also review the undisputed facts of the case based on the records filed in the main case relating to the debtor East Tech Company ("Debtor" or "East Tech"). The Debtor filed its voluntary Chapter 11 bankruptcy petition on February 10, 2014. [Bankr. Case No. 14-10532, Doc. No. 1]. The Debtor was a corporation that operated a precision machine shop in a 30,000 square foot warehouse located on River Terminal Road in Chattanooga, Tennessee. *See* [Bankr. Case No. 14-10532, Doc. No. 93, Schedule A]. The operations used numerous sizeable machines and pieces of equipment. In its Schedule B, filed with the bankruptcy petition, the Debtor listed its machinery and equipment as having a valuation of $1,907,911.78. [Bankr. Case No. 14-10532, Doc. No. 94, p. 4, Schedule B]. The machinery and equipment listed in the Debtor's Schedule B includes such items as cutoff saws, banksaws, sander, vises, compressor, newturn mill, newturn lathe, tooling shop tables, appliances, drills, compressors, and welders. *Id.* The Debtor operated as a debtor-in-possession until August 28, 2014 when the Trustee was appointed. [Bankr. Case No. 14-10532, Doc. No. 178].

The Defendant Pryor Bacon has several years of realtor and broker experience and owns and leases a number of commercial real estate properties in Chattanooga. Complaint, ¶ 2. The other Defendant Pryority is the owner of real estate located at 3115 Freeman Avenue in

Chattanooga, Tennessee. The Trustee alleges that Bacon owns or is a general partner of Pryority.

*Id. See also,* [Doc. No. 10, Trustee's Objection/Response to Defendants' Motion to Dismiss, p.

15]. Approximately a month before the Trustee was appointed, the Debtor and Pryority reached

an agreement for Pryority to lease space on the Freeman Road Property to the Debtor when the

Debtor was required to move from its space on River Terminal Road. It is this lease that is at the

center of this dispute.

    CapitalMark Bank & Trust ("CapitalMark") is a creditor of the Debtor that holds two

promissory notes secured by a lien on the accounts, equipment and inventory of the Debtor. On

June 26, 2014, CapitalMark filed a motion for abandonment and for relief from the automatic

stay. [Bankr. Case No. 14-10532, Doc. No. 144]. On July 25, 2014 the court entered an agreed

order resolving CapitalMark's motion for abandonment and for relief from the stay. [Bankr. Case

No. 14-10532, Doc. No. 151]. In the court's order the Debtor agreed to numerous provisions,

including that "[a] copy of the lease agreement for the space where the Business will be moving

and operating after July 31, 2014, and a waiver from the landlord of any landlord's lien on the

Collateral" would be provided to CapitalMark by July 25, 2014 at 5:00 p.m. *Id.* at p. 3. In

addition, the Debtor agreed in Paragraph 13 of the agreed order that "[n]o later than August 7,

2014 at 5:00 p.m., all of the machinery and equipment of the Debtor shall be operational and

ready to conduct business." *Id.* at p. 4. The order provided that if the Debtor did not provide a

copy of the lease agreement to CapitalMark by the stated deadline, "the automatic stay

provisions of 11 U.S.C. § 362 [would be] terminated effective as of 12:01 a.m. on July 26, 2014,

and the Collateral [would be] deemed abandoned pursuant to 11 U.S.C. § 554." The order further

provided that if the deadlines set forth in Paragraph 13 were not met, "the automatic stay

provisions of 11 U.S.C. § 362 are terminated effective as of 12:01 a.m. on the date following the

date that such conditions should have been met, and the Collateral is deemed abandoned pursuant to 11 U.S.C. § 554." *Id.*

The Complaint alleges that in August of 2014 the Debtor moved its operations from the River Terminal Road space to a warehouse located at 3115 Freeman Avenue, an 80,000 square foot building that Pryority owned in Chattanooga, Tennessee (the "Premises"). Complaint, ¶ 5. The Debtor was no longer operating and most of its employees had quit by September 2, 2014. *Id.* The Trustee alleges that the Premises were in "general disarray" at that time. *Id.* The Trustee contends that although the Debtor's equipment had been moved to the Premises and the Debtor and Pryority were negotiating a lease, they had not entered into a written lease. No court approval had been requested for the entry into a lease with Pryority.

On August 28, 2014 the United States Trustee filed a Notice of the Appointment of the Trustee. [Bankr. Case No. 14-10532, Doc. No. 178]. On the same day, the court entered an order granting the motion to appoint a trustee. [Bankr. Case No. 14-10532, Doc. No. 180]. On September 4, 2014, the court entered an agreed order providing that the Trustee and CapitalMark had agreed to modify the court's order dated July 25, 2014. [Bankr. Case No. 14-10532, Doc. No. 188]. The September 4th agreed order provided in part that:

> The Debtor did not pay the interest payment required by that order by September 1, 2014, and it is in default in the terms of that order for that reason and possibly other reasons. The Trustee believes there is equity in the Bank's collateral which consists primarily of the Debtor's equipment. The Bank is agreeable to giving the Trustee a certain time to sell the equipment, provided that its collateral is protected and its debt is paid first out of the proceeds of sale.

*Id.* On October 9, 2014, the court entered an order approving an auction sale of the Debtor's equipment assets on November 18, 2014. [Bankr. Case No. 14-10532, Doc. No. 206].

The Trustee began to entertain offers from public auction companies regarding conducting an auction sale of the Debtor's equipment on the Premises. Complaint, ¶ 9. The

Complaint states that the Trustee struggled to pay essential expenses of the estate during

September of 2014 to get assets ready for sale. *Id.* at ¶ 10. The Trustee asserts that Bacon was

Pryority's agent and that he met with Bacon on the Premises on September 5, 2014. *Id.* at ¶ 11.

The Trustee asserts that he informed Bacon of the following:

> He reported that the Debtor had no funds to pay creditors at this time. None of the
> contractors who had moved the Debtor's equipment the month before had been
> paid. He told Bacon that many employees and current creditors, including
> Defendant Bacon, had been left in the lurch by the Debtor. The Trustee informed
> Bacon that the Bank had given the Trustee 75 days to have an auction sale; that
> the Trustee planned to pay administrative creditors as soon as possible after the
> sale; and that a sale should take place around mid-November.

Complaint, ¶ 11. The Trustee contends that Bacon appeared to be helpful and cooperative at that

time. With respect to the terms of the unwritten lease, the Trustee asserts that the Debtor

informed him that Bacon had agreed to rent of $7,866 per month beginning in 2015 with the first

four months of the Debtor's occupancy of the Premises to be free. *Id.* at ¶ 13. The Trustee and

Bacon did not discuss rental terms during the month of September 2014. *Id.*

In late September of 2014, Bacon provided the Trustee with three invoices from Pryority

listing an amount of $7,866 each relating to August, September and October 2014 rent.

Complaint, ¶ 14. He further provided an invoice for $8000 for work allegedly completed on the

Premises prior to the Debtor's occupancy. *Id.* The Trustee filed the bills away as he did not have

funds to pay them at that time.

The Trustee managed to negotiate an acceptable contract for the public auction of the

Debtor's equipment with the Branford Group ("Branford"), which guaranteed the estate a

minimum of $825,000 for the equipment sale. Complaint, ¶ 15. An amount that high would

allow the Trustee to pay all of the Chapter 11 administrative expenses, including the expense of

rent for the Premises. The Trustee agreed to allow Branford "unfettered access to the Premises to

allow it to arrange the equipment into lots, tag it, and photograph it for sale." *Id.* The auction was scheduled for November 18, 2014, and Branford needed a couple of weeks to complete its cataloguing of the Debtor's equipment. *Id.*

During October of 2014, heavy rains caused serious leaking in the roof of the Premises, and puddles of water gathered near the Debtor's equipment. Complaint, ¶ 16. On the morning of October 15, 2014, Bacon informed the Trustee that he desired payment for the invoices provided in late September. The Trustee responded that he would not have any funds until December. The Trustee further informed Bacon that the roof was leaking and the docks were flooded. At that time several employees of both Branford and the estate were on the Premises preparing the equipment for sale. *Id.* at ¶ 17.

Around midday on October 15, 2014, Bacon arrived at the Premises and ordered the Branford employees to vacate the building immediately. Complaint, ¶ 18. He informed the employees there that he would not permit a sale at the Premises. Following the evacuation of all of the employees, Bacon locked the doors and turned off the electrical power to the building. *Id.* at ¶ 18. Bacon knew of the Debtor's bankruptcy petition, but he did not petition the court to lift the automatic stay. *Id.* at ¶ 19. No notice of default or termination was ever provided.

The Trustee asserts the following regarding his reaction to Bacon's attempt to lockdown the Premises:

> Bacon's eviction actions came as a complete surprise to the Trustee. The Trustee learned of the situation shortly after 1:00 pm on October 15. He immediately called Bacon on the telephone. The Trustee advised him that he had no right to lock up the Premises or shut off the power. Bacon replied that is the way he does business. He said the Trustee must pay him now or move the equipment out of his building. He was not going to permit a sale there.
>
> The Trustee spent the rest of the afternoon of the 15th frantically trying to restore order. He advised the Auction Company and the Trustee's employees, who had left the area, that they should go back into the building. He tried to assure

Branford that it should continue. He notified the Bank of the incident and advised
that he would try to keep the sale on track. However, Bacon was insistent that the
sale could not occur in his building. The Trustee contacted the Defendant's
attorney, Doug Johnson, who told the Trustee that Bacon had the right to stop the
sale, as he had not consented to it on his Premises.

Complaint, ¶¶ 21-22.

The Trustee contends that Bacon's actions seriously threatened the auction sale. He

further asserts that Bacon continued to threaten the estate after October 15, 2014. The Complaint

states that on October 16, 2014, Bacon's attorney informed the Trustee that the Debtor was using

more space than was anticipated and that the rent should be $12,000 per month. Bacon wanted

the increased rent to be paid immediately or he would ask the court to cancel the sale. The

Trustee and Bacon's attorney met on the Premises on October 17, 2014 to discuss the issues, and

the attorney insisted that Bacon still intended to move this court to stop the sale. Complaint, ¶ 23.

The Trustee concluded that the sale was still at risk due to Bacon's threats.

Following this interchange the Trustee asserts that the following events occurred:

On Sunday, October 19, 2014, Bacon texted the Trustee demanding that the
Trustee meet with him that afternoon and "settle this." The Trustee believed
Bacon was unstable and contacted Attorney Johnson instead. He told Attorney
Johnson that Bacon was not to contact the Trustee directly anymore, and he did
not want Bacon on the Premises. Because of Bacon's unpredictable and
threatening behavior, the Trustee advised his employees to call the police or make
the building's alarm go off if Bacon showed up again.

The next week remained tense, as the Trustee waited for Bacon to lock the estate
out again or file some kind of emergency motion to cancel the sale. This did not
come, and on October 24, Attorney Johnson, finally advised the Trustee that
Bacon had decided not to try to stop the sale. He would file a motion for
administrative expense instead.

Complaint, ¶¶ 24-25.

Pryority filed a motion for an administrative claim in the amount of $28,000 per month in

the Debtor's main bankruptcy case on November 7, 2014. *See* [Bankr. Case No. 14-10532, Doc.

No. 225]. In the motion, Pryority argued that the rent should be a minimum of $16,131.25 per month as the Trustee was using far more than the negotiated space. *Id.* at p. 2.

Attached to the motion for an administrative claim is an unsigned lease that relates to the Premises. [Bankr. Case No. 14-10532, Doc. No. 225-1, Ex. A]. Contrary to the allegations in the motion, the unsigned lease indicates a term of five years with a blank listed for the base rent for months 1 through 4 with an insurance and tax estimate of $688.33 per month. *Id.* at p. 1. Months 5 through 28 indicate a rent of $7,866.67 per month with insurance and taxes estimated at $688.33 per month. *Id.* The rent provision of the unsigned lease indicates that "[i]f Lessee fails to pay two (2) or more months [sic] rent and ignores all communication from Lessor to collect rent or make arrangements to collect rent, Lessor has right to enter premises change locks and retain contents." *Id.* at p. 2. Exhibit B attached to the motion is a copy of a check written by the Debtor to Pryority Partnership in the amount of $7,866 and dated August 6, 2014. [Bankr. Case No. 14-10532, Doc. No. 225-2, Ex. B].

The court granted the motion to convert the case from Chapter 11 to Chapter 7 on November 25, 2014. [Bankr. Case No. 14-10532, Doc. No. 233]. The Trustee was appointed Interim Trustee of the Debtor's Chapter 7 bankruptcy case on the same day. [Bankr. Case No. 14-10532, Doc. No. 235]. In its objection to Pryority's motion for administrative expenses, the Trustee asserted that the Debtor informed him that it did not agree to all the terms of the lease and therefore never signed it. [Bankr. Case No. 14-10532, Doc. No. 242, ¶ 2].

The Trustee summarizes his claims against the Defendants in the following way in his Complaint:

> The Trustee avers that, at all times material, Defendant Bacon was the agent for Defendant Pr[y]ority, and Bacon's actions are imputed to Pryority. The Trustee avers that the Defendants have willfully violated the Section 362 automatic stay by their conduct in evicting the estate and the auction company on October 15

from the Premises. The stay violations continued for the next 10 days, as Bacon
made repeated demands for payment. He continued to threaten to disrupt the
carefully planned and Court-approved sale. The estate was clearly in possession
of the Premises at 3115 Freeman Avenue, yet the Defendants willfully ignored
bankruptcy law and state law in their actions. They seriously jeopardized this
beleaguered estate's contract with Branford and the agreement with CapitalMark
Bank, which in turn imperiled the lawful creditors.

Complaint, ¶ 27.

The Complaint asks for a determination from this court that the Defendants willfully

violated the automatic stay pursuant to 11 U.S.C. § 362. The Trustee seeks actual damages and

punitive damages, as well as a proper valuation of the rent and equitable subordination of any

remaining administrative expense claim pursuant to 11 U.S.C. § 510(c).

## II.     Standard of Review

Federal Rule of Bankruptcy Procedure 7012(b) states that Federal Rule of Civil

Procedure 12(b) applies to adversary proceedings. *See* Fed. R. Bankr. P. 7012(b). Federal Rule of

Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a

claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "treat as true all of the well-

pleaded allegations of the complaint." *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th

Cir. 1996)). In addition, a court must construe all allegations in the light most favorable to the

plaintiff. *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th

Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955,

1969 (2007). The complaint "must contain either direct or inferential allegations respecting all

the material elements to sustain a recovery under *some* viable legal theory." *Allard v. Weitzman*

*(In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993)) (emphasis in original). The court will thus review the motion to dismiss by assuming the facts are as alleged by the Trustee. It will further consider whether any set of facts may exist, based on the allegations in the Complaint, that support the Plaintiff's legal claims sufficient to deny the motion to dismiss.

### III.    Analysis

### A.    Whether Bacon Should be Dismissed as a Defendant

The court agrees that the Trustee should be precluded from obtaining a double recovery against both Pryority and Bacon. However, the court declines to dismiss Bacon from this proceeding at this stage. The Trustee's Complaint alleges that Bacon may be liable individually as a general partner for his actions which violated the automatic stay.

Under Tennessee law, subject to the effect of a statement of partnership authority under § 61-1-303:

> (1) Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner who had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority; . . .

Tenn. Code Ann. § 61-1-301(1). If Pryority is a general partnership, then Bacon can be individually liable for his acts if he is a general partner based on this provision. In addition, Tennessee courts provide that an agent can be personally liable for tortious acts, even when committed on behalf of a principal. For example, in *Fidelity & Deposit Co. of Maryland v. Hamilton National Bank* the Tennessee appellate court held that:

> [n]either logic nor reason permits a principal to escape liability for an act done through the medium of an agent which, if done by the principal, would have resulted in liability and, likewise, the agent cannot escape the consequences of an

11

illegal and unauthorized invasion of the right of third persons merely upon the
ground that it acted for its principal.

126 S.W.2d 359, 364 (Tenn. Ct. App. 1938).

Therefore, the court concludes that Bacon could be personally liable for his individual

tortious actions as alleged by the Trustee, even if they were committed on behalf of Pryority. The

court will decline to dismiss Bacon from this adversary proceeding at this early stage of the case.

**B.      Whether the Automatic Stay May Apply to the Post-petition Lease
         Agreement**

The Defendants argue that the Trustee has failed to state a claim upon which relief can be

granted because the automatic stay provisions of 11 U.S.C. § 362(a) do not apply to property

acquired post-petition or to enforcement of contracts entered into post-petition. 11 U.S.C. §

362(a) states in part:

> Except as provided in subsection (b) of this section, a petition filed under section
> 301, 302, or 303 of this title, . . . operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of
> process, of a judicial, administrative, or other action or proceeding against the
> debtor that was or could have been commenced before the commencement of the
> case under this title, or to recover a claim against the debtor that arose before the
> commencement of the case under this title; . . .
>
> (3) any act to obtain possession of property of the estate or of property from the
> estate or to exercise control over property of the estate; . . . .

11 U.S.C. §§ 362(a)(1), (a)(3). Taking, first, the issue of applicability to property acquired after

the filing, 11 U.S.C. § 541 defines "property of the estate" in part as "all legal or equitable

interests of the debtor in property as of the commencement of the case," as well as "[a]ny interest

in property that the estate acquires after the commencement of the case." 11 U.S.C. §§ 541(a)(1),

(a)(7). The Debtor in Possession entered into the lease for the benefit of the estate. As such, the

leasehold interest became property of the estate. *Ellenberg v. Griffin & Co. (In re Midland*

12

*Mechanical Contractors, Inc.*, 196 B.R. 653, 657 n.3 (Bankr. N.D. Ga. 1996) (noting that ". . .

since the Debtor entered into the contract at issue in his capacity as debtor in possession," he

"thereby [made] the contract itself an asset of the bankruptcy estate"); *French v. Marion General

Hosp. (In re Patterson)*, No. 08-3025, 2008 WL 2276961 (Bankr. N.D. Ohio June 3, 2008)

(quoting legislative history of Section 541(a)(7), 124 Cong.Rec.  11096, H 11114 (Sept. 28,

1978) stating that " 'if the estate enters into a contract, after the commencement of the case, such

a contract would be property of the estate pursuant to § 541(a)(7)' ").  Therefore, the post-

petition lease or possessory interest becomes property of the estate pursuant to 11 U.S.C. §

541(a)(7).

      The Defendants cite several cases in support of their argument that the stay does not

apply that are distinguishable from the facts alleged in the Trustee's Complaint. Defendants fail

to distinguish cases which hold that the stay does not apply to actions to enforce post-petition

contract rights and actions taken to interfere with property of the estate in an effort to extort

rights not given contractually or by otherwise applicable law. In *In re Plexus* the bankruptcy

court addressed whether an insurance company's cancellation of an insurance policy issued to

the debtor post-petition violated the automatic stay. 289 B.R. 778, 779 (Bankr. M.D. Fla. 2002).

In *In re Plexus* the bankruptcy court relied on *Bolin Oil Co. v. Reliance Ins. Co. (In re Bolin Oil

Co.)*, 51 B.R. 936 (Bankr. N.D. Ohio 1985) and *In re New England Marine Services, Inc.*, 174

B.R. 391 (Bankr. E.D.N.Y. 1994) for support of its conclusion that "post-petition insurance

policies are property of the estate; however, the same are not subject to 11 U.S.C. § 362 because

a post-petition contract (in these cases an insurance policy) is not property of the estate at the

time of the commencement of the case." 289 B.R. at 779. The bankruptcy court found that

"[i]mplicit in the language of 11 U.S.C. § 362 is that the stay is granted to a debtor against all

property of the debtor at the commencement of its case, not during the bankruptcy case of the

debtor when it acquire[s] post-petition property." *Id.* The court concluded that "the automatic

stay is inapplicable to acts done post-petition with post-petition property of the estate." *Id.*

The Defendants also rely on the two cases relied upon by the bankruptcy court in *In re

Plexus*, *In re Bolin Oil Co.* and *In re New England Marine Services, Inc.* Both of those cases

involve the cancellation of post-petition insurance contracts. In *In re Bolin Oil* the debtor had

obtained a post-petition insurance policy. The insurance policy provided that it could be

cancelled by either party upon thirty-days' notice. 51 B.R. at 937. The insurer provided the

debtor with thirty-days' notice of cancellation of the policy even though the insurer knew the

debtor was in a Chapter 11 bankruptcy in U.S. Bankruptcy Court. *Id.* The insurer informed the

debtor that it was cancelling the insurance policy due to the "financial statement" of the debtor.

*Id.* The court concluded that "the insurance company did give proper notice of the cancellation as

required by the provisions of the contract." *Id.* at 938. The court concluded that "[t]he

Bankruptcy Code does not enlarge the rights of the debtor under a contract, and it doesn't

prevent the termination of a contract by its own terms. The bankruptcy court cannot compel an

insurance company to renew an expired policy with the debtor." *Id.* Relying on *In re Douglas*, 18

B.R. 813 (Bankr. W.D. Tenn. 1982), the court found:

> In a post-petition insurance contract case as the case *sub judice* the insurance
> company enters into the contract with the debtor with knowledge of the
> bankruptcy of the debtor, and the cancellation of the insurance contract is more
> likely to be based upon the sound actuarial judgment of the insurance company.
> This court also "finds nothing in the Bankruptcy Code which enlarges the rights
> of the DIP under the contract or which prevents the termination of the insurance
> under the policy's own cancellation provisions." Both the debtor and the
> insurance company had an equal right to terminate the contract.

*Id.* at 939 (quoting *In re Douglas*, 18 B.R. at 815).

In *In re New England Marine Servs., Inc.* the bankruptcy court likewise analyzed the termination of a post-petition insurance contract. 174 B.R. 391. That court also concluded that "[a]n analysis of the case law relevant to postpetition insurance agreements reveals that an insurer of a debtor is entitled to cancel a *postpetition* insurance policy pursuant to its contractual provisions without lifting the stay on the grounds that the stay never became effective." *Id.* at 396. The court concluded that the insurer in that case was simply trying to enforce its right pursuant to a provision in the contract to terminate the insurance policy upon thirty-days' notice. *Id.*

Similarly, in *In re Douglas* the court addressed the question of the cancellation of a comprehensive insurance policy relating to the debtor-in-possession and obtained after the filing of the Chapter 11 bankruptcy petition. 18 B.R. 813 (Bankr. W.D. Tenn. 1982). The court concluded that there was "nothing in the Bankruptcy Code which enlarges the rights of the DIP under the contract or which prevents the termination of the insurance under the policy's own cancellation provisions." *Id.* at 815.

These cases are distinguishable from the facts alleged in the Trustee's Complaint here. The cases cited by the Defendants all involve insurance contracts with written provisions that were entered into by agreement of both parties. In each case the insurer cancelled an insurance policy *according to the provisions* of the policy entered into and signed by both parties. In marked contrast, this proceeding involves allegations relating to a commercial lease in which the Trustee alleges the Defendants agreed to provide East Tech with free rent for the first four months of the lease agreement. Therefore, allegations that Bacon evicted the Trustee's and auction company's employees, locked the premises, and disconnected the electrical power indicate that, if true, Bacon may have violated the terms of the parties' lease agreement since the

Debtor did not yet owe any rent for the premises. Accordingly, the facts, as alleged in the

Complaint, suggest that the Defendants were in breach of the unwritten agreement when they

locked the premises on October 15, 2014. This fact alone makes the allegations different from

the cancellation of a post-petition contract in accordance with its terms as described in the

insurance policy cases cited by the Defendants.

The only case on which the Defendants rely that is not an insurance policy case with

defined terms is *In re Kile*, 345 B.R. 182 (Bankr. D. Ariz. 2004). That case involves complicated

facts relating to an individual couple's convoluted and fraudulent attempts to stave off

foreclosure of their Southern California beach home. The individual Kile couple began

experiencing financial difficulties in 2003 and defaulted on their mortgage payments relating to

their home located in Solana Beach. *Id.* at 191. Unbeknownst to anyone else the couple

attempted to convey their interests in the beach property to their wholly owned limited liability

company, Ribsy Productions ("Ribsy"). *Id.* However, the couple never recorded the documents,

and the documents were not notarized. There was no evidence of any consideration provided for

the transfer. *Id.*

The *Kile* situation is highly distinguishable from the situation alleged in this case. In *Kile*

the post-petition transfer of the property was a sham meant to evade creditors and prevent

foreclosure of the Kiles' beach house. Thus, although the bankruptcy court did cite the *In re*

*Plexus* case in support of its finding that the automatic stay did not protect post-petition property

from post-petition acts, other factors played a significant role in the court's decision, including

the fact that Ribsy's acquisition of the property was essentially a sham transfer, Mr. Kile's lack

of standing to raise the issue, and waiver of the argument. In this case, the Debtor negotiated for

the right to possess the tenancy with the landlord's support and full disclosure to the landlord that

16

it was in bankruptcy. As such, the lease was property of the estate and termination for non-payment of rent required relief from the stay.

The Defendants argue that there is a need to protect parties who conduct business with debtors-in-possession by enforcing the written terms of their contracts. This court agrees. The problem with this case, considering the facts as alleged by the Trustee to be true, there had been no default on the rental terms between the parties when the Defendants began interfering with the Trustee's court-approved auction sale. The Debtor informed the Trustee that no rent would be due for four months. The lease attached to the Defendants' motion for administrative expenses supports the Trustee's position. If that is the case, then the Defendants breached the right of quiet enjoyment to the property. *See Moe v. Sprankle*, 221 S.W.2d 712, 715 (Tenn. Ct. App. 1949) (finding a right of quiet enjoyment to property exists and "protects the lessee from any act of the lessor which destroys the quiet and beneficial enjoyment of the use of the property"). As the court noted in *Morrison v. Smith*, "[i]n any ordinary lease of realty there is an implied covenant that the lessee will have the quiet and peaceable possession and enjoyment of the leased premises. . . . Where there is nothing in the lease contract to the contrary, there is no requirement for an actual eviction to occur in an action for damages for a breach of the covenant of quiet enjoyment." 757 S.W.2d 678, 682 (Tenn. Ct. App. 1988) (citing *Sprankle*, 221 S.W.2d at 715).

In *Convenient Food Mart No. 144, Inc. v. Convenient Industries of America, Inc. (In re Convenient Food Mart No. 144, Inc.)* the Sixth Circuit examined the question of "whether a tenancy at sufferance is a property interest sufficient to trigger the bankruptcy court's jurisdiction." 968 F.2d 592, 594 (6th Cir. 1992). The court joined the Second and Third Circuit Courts of Appeals "in holding that a tenancy at sufferance is a possessory interest in real

17

property within the scope of the estate in bankruptcy under section 541." *Id.* (relying on *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir. 1987) and *In re Atlantic Business and Community Corp.*, 901 F.2d 325, 325 (3d Cir. 1990)). Thus, even in the absence of a written lease, or in a holdover situation, the Trustee had a possessory interest in the Property that was within the scope of the estate. The acts Bacon undertook, as alleged in the Complaint, raise enough of a claim for interference with that right to survive the Defendants' motion to dismiss.

In their reply brief the Defendants argue that the automatic stay does not apply to their administrative claim for rent, relying on 11 U.S.C. § 503. This argument was not raised in the Defendants' original motion, and the court will not address it here.

### C.   Whether the Defendants Exercised Control Over Pre-petition Property of the Estate

The Trustee asserts that the Defendants' attempts to exercise control over equipment and machinery located on the Premises violated the stay outlined in Section 362(a)(3). The Defendants argue that the Trustee did not make any such allegations in his Complaint. The court disagrees. The court finds numerous references in the Complaint to the equipment and Mr. Bacon's actions interfering with its disposition. Complaint, ¶¶ 18, 20-22. The Defendants further argue that the Trustee had abandoned the interest in the equipment and machinery, the objects of the auction sale. Relying on the agreed order entered by the court on July 25, 2014 resolving CapitalMark's motion for abandonment and for relief from the stay (Bankr. Case No. 14-10532, Doc. No. 151), the Defendants assert that the agreed order created nothing more than a "legal fiction" to return the collateral to the estate. [Bankr. Case No. 14-10532, Doc. No. 188]. The Defendants spend several pages on their abandonment argument in their reply brief. [Doc. No. 11].

At a hearing held on the allowance of Pryority's administrative claim, counsel for Bacon and Pryority indicated that the equipment had not been completely abandoned, but only abandoned to the secured creditor. The court has interpreted that statement for purposes of this motion as a withdrawal of the abandonment argument. [Bankr. Case No. 14-10532, Hearing on Pryority Partnership's Motion to Compel Debtor to Pay an Administrative Expense Claim, Statements of E. Donnovin, Attorney for Pryority, February 5, 2015, 10:37 a.m.]. The court concludes that it will not address the abandonment argument as it no longer needs to do so to resolve the Defendants' motion to dismiss.

### D.    Whether the Trustee's Claim of Equitable Subordination Should Be Dismissed

In his Complaint the Trustee asserts a claim of equitable subordination. He alleges the following with respect to that claim:

> The Trustee avers that the actions of Bacon, imputed to Pryority, amount to willful misconduct in connection to the administration of the bankruptcy estate. The Defendants are guilty of inequitable conduct. As such, any valid administrative claim held by Pryority should be equitably subordinated under 11 U.S.C. § 510(c).

Complaint, ¶ 31. Thus, the Trustee's Complaint incorporates the prior allegations regarding Bacon's alleged eviction activities into the allegations pertaining to equitable subordination.

The Trustee notes that the Defendants do not address the Trustee's claim for equitable subordination in their opening brief in support of their motion to dismiss. It is only in their reply brief, which is much longer, that they address the equitable subordination claim. As the Sixth Circuit noted in *Scottsdale Ins. Co. v. Flowers*, "we have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses." 513 F.3d 546, 553 (6th Cir. 2008). The Court in *Flowers* quoted the Federal Circuit for its rationale of why issues raised for the first time in a reply brief must be waived:

> Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.

*Id.* at 553 (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)). Thus, the court concludes that the Defendants waived the right to move to dismiss the Trustee's equitable subordination claim based on their failure to raise the issue in their opening brief in support of their motion to dismiss.

Even if the court concluded that the Defendants did not waive the equitable subordination issue, the court concludes that the Trustee's Complaint provides the Defendants with enough notice of this claim to withstand the Defendants' motion to dismiss. 11 U.S.C. § 510(c) states in part:

> Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest. . .

11 U.S.C. § 510(c).

The Bankruptcy Appellate Panel for the Sixth Circuit outlined the elements required for equitable subordination in *Hamerly v. Fifth Third Mortgage Co. (In re J&M Salupo Devel. Co.)*, 388 B.R. 795, 804 (B.A.P. 6th Cir. 2008). There, the court outlined the three elements which a plaintiff must demonstrate by a preponderance of the evidence:

> 1.    The claimant must have engaged in some type of inequitable conduct;
> 2.    The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and
> 3.    Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code].

*Id.* (quoting *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699-700 (5th Cir.

1977)). In addition, where the claimant is a non-insider, "egregious conduct must be proven with

particularity. It is insufficient for the objectant in such cases merely to establish sharp dealing;

rather, he must prove that the claimant is guilty of gross misconduct tantamount to 'fraud,

overreaching or spoliation to the detriment of others.'" *In re J&M Salupo Devel. Co.*, 388 B.R. at

805 (quoting *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs. Inc.)*, 974

F.2d 712, 718 (6th Cir. 1992)). Although the Trustee's claim for equitable subordination might be

thin, the court declines to dismiss the claim at this stage of the proceeding. The Trustee alleges

that Bacon wrongfully evicted the Trustee's employees and auction company personnel, shut off

the power, and wrongfully locked the premises. Bacon also allegedly threatened to disrupt the

auction proceedings. It is possible that the Trustee can demonstrate gross misconduct on the part

of Bacon and possible spoliation of property of the estate based on the conduct described in the

Complaint. The inequitable conduct alleged was taking steps to deprive the Trustee of property

of the estate or to quiet enjoyment of the Property to which the estate held at least a possessory

interest. The Trustee's Complaint alleges that such actions may have jeopardized the auction to

sell property of the estate to benefit the creditors of the estate. This is enough to allege harm to

creditors. Lastly, the question of whether equitable subordination in this situation is inconsistent

with the Bankruptcy Code appears to be a legal question for this court to answer once it

determines that the first two elements have been met. For these reasons, the court declines to

dismiss the Trustee's equitable subordination claim.

**IV.      Conclusion**

For the reasons explained *supra* the court concludes that it will DENY the Defendants'

motion to dismiss.

# # #